JOHN B. HAIR v. W. H. DOWNING.

*Easement—Evidence.*

1. In an action against the defendant for flooding the plaintiff's land, evidence is admissible to show that the plaintiff knew that the defendant claimed the right to drain his land through that of the plaintiff before he purchased it.

2. Where a party has the right to use a ditch to drain his land, he has the right to keep it open and clear from obstructions.

3. Where a man owns two tenements, the one dominant and the other servient, and sells them both to different parties, the easement passes with the legal estate of the tract to which it belongs, and the grantee of the servient tenement takes it subject to the easement.

(*Shaw* v. *Etheridge*, 3 Jones, 300; cited and approved).

CIVIL ACTION, tried before *Gilmer, Judge,* at November Term, 1886, of CUMBERLAND Superior Court.

There was a judgment for the defendant, and the plaintiff appealed.

The facts fully appear in the opinion.

No counsel for the plaintiff.
*Mr. N. W. Ray,* for the defendant.

SMITH, C. J.   The plaintiff derived title to the land, alleged to have been injured by an overflow of water caused by the wrongful act of the defendant, in August, 1882, under the deed of N. L. Ray to him, made on December 4th, 1876, while the defendant obtained title to an adjoining tract from the same proprietor, executed nearly three years previous. This deed, after describing the land as lying on Alligator Swamp and by definite boundaries, annexes thereto these further words: " together with the privilege of a ditch eight feet wide, to be made, located and constructed so as to do the least damage to the land through which it will be necessary

to pass, in order to drain the above conveyed land into Alligator Swamp."

There was evidence that at that place there was an old ditch made in 1869 or 1870, and that in 1874, when Ray deeded to defendant Ray owned the land which plaintiff alleges is damaged; and Ray and Downing had both testified that there was no other way in which he, defendant, could drain the land he bought from Ray, but through that ditch to Alligator Swamp. Downing testified that he immediately deepened and widened it, so as to make it about four feet wide, and three to four feet deep, and that in August, 1882, he did nothing but clean the trash out of it; and there was evidence that the natural flow would carry water from defendant's land on the lands of the plaintiff.

The plaintiff was interrogated on his cross-examination,. as was the defendant on his direct examination, as to the plaintiff having notice of the defendant's claim to use the ditch for drainage purposes, before he purchased the lower tract, and this evidence, after objection, was received and exception taken thereto. The defendant then testified to a conversation had between the parties in regard to the ditch and right of drainage, in which the defendant was told, that he "could go to the middle of the swamp with his ditch, and that no one could prevent it," &c.

We cannot see the ground of opposition to the proof that the plaintiff knew of, and recognized the easement attaching to the defendant's land, and its possible effect in impairing the value of that which he afterwards took a deed for, as a servient tenement.

The testimony was, that Ray and Downing, before the deed to Downing, went upon the land, which was then uncleared, examined the old ditch, and that that was the ditch which was intended to be deepened and widened by Downing so as to drain the land he was buying. There was testimony that the natural course and flow of water from

Upper Alligator Swamp, in which was the defendant's land, was round a point, and then through Lower Alligator, in which was defendant's land.

The plaintiff asked the Court to charge the jury that defendant has failed to prove an easement by grant:

1st. Because of the vagueness and uncertainty of the description contained in the deed from Ray to Downing, July 26, 1874.

2d. Because no servient lands of the grantor are described in said deed as being bound by the privilege of a ditch.

3d. Because the deed speaks of a ditch to be made, located and constructed; and there is no evidence of any ditch being made or located after the date of the deed, but the evidence is all directed to an old ditch, which from the evidence, was cut in 1869 or 1870.

The Court refused so to instruct the jury, and plaintiff excepted.

The plaintiff also requested the Court to charge, that if the jury shall believe from the evidence that the defendant, by means of cutting, deepening and widening the ditch, caused the water to flow upon plaintiff's land either, in greater quantity, or sooner than it would have done if left to the natural courses, in the absence of a right by grant or prescription so to do, he would be liable for any damage he might occasion thereby. That even if defendant had an easement under the Ray deed, it would only apply to the Ray land, and not to the other lands of the plaintiff, set out in the second cause of action of the complaint.

The Court gave this charge, and added, that Ray by his deed to Downing, could not give any right that would damage lands not his own, or that belonged to third parties.

The enlargement of the existing ditch in width and depth, was made soon after the defendant became owner of the upper tract, and it was conceded to be the only mode of drain-

age into the swamp by Ray, then owning the other tract. The only act charged upon the defendant, was his removal in August, 1882, of the trash that had accumulated in it, and the right to keep open a drain is a legal incident to the right to use it as such.

We do not advert to the terms in which the privilege to have a ditch of much larger dimensions is conferred in the deed ; for while this is possessed also, and may be made effectual by proper proceedings to locate it, and might be more detrimental, if indeed this was necessary after the then owners had agreed that that existing should be used as such, we are of opinion that the servitude of the one to the other, existing when both belonged to one owner, remained when the severance was effected by the different conveyances. The easement passed with the legal estate in the tract to which it adhered, and in the like plight was the servient tenement conveyed to the plaintiff, whose rights, especially after full notice, cannot be superior to those of his grantor. " Where one having two tenements, and a gutter from one of them ran over or across the other, sold one tenement to one and the other to another, it was held that the easement and servitude of the gutter passed with the respective estates by the form of the grant." *Copes case,* Year Book, 11 Hen. VII, 25. " So where the owner built an aqueduct from a spring on his land to his dwelling, and granted the dwelling, the easement passed with it. *Nicholas* v. *Chamberlain*, Cro. Jac., 121 ; both above cases cited in Washburn on Easements, with other cases, at page 49, and following. In Gould on Waters, §354, the doctrine is thus declared: " A grant by the owner of a tenement of part of that tenement, as *it is then used and enjoyed,* passes to the grantee by implication * * * * * all those easements which the grantor can convey, and which are necessary to the reasonable enjoyment of the granted property, and have been and are, at the time of the

grant, used by the owner of the entirety for the benefit of the granted tenement."

So it is said by another author, that where the terms of a grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties. Ang. Water Courses, §363, and cases cited in note 1, and among them *Jonnison* v. *Walker*, 11 Gray, 426; and *Woodcock* v. *Estey*, 43 Verm., 522.

The effect of a conveyance of land, with the attaching easements, in transferring them also, is ruled in a similar way in *Lampman* v. *Milks*, 21 N. Y., 505; the Court declaring that the diversion of a natural stream into an artificial channel for relief from overflow, and the land in that condition being sold to different persons, they each take their respective estates, benefited or burdened with the easement.

The same doctrine is recognized in *Shaw* v. *Etheridge*, 3 Jones, 300. The suit was for obstructing a ditch, and the outflow of water from the plaintiff's land through it. The defendant, when owning both, had cut the ditch, and then sold the lower tract to the plaintiff. The Court charged that if the defendant obstructed the ditch after he sold to the plaintiff, or if additional obstructions were placed in the ditch so as to impede the flow of water from plaintiff's land, he was entitled to damages, and this charge was sustained.

The controversy seems to have been confined to the relations of the tracts derived from the same source, and our discussion does not extend to the allegations as to other lands of the plaintiff, made in the complaint. The drainage should be with the least injury to the lower land, consistent with its rightful enjoyment, upon the maxim, *sic utere tuo ut alienum non lædas.*

There is no error, and the judgment is affirmed.

No error.                                        Affirmed.