## JAMES KELLY

### v.

## PHEBE M. DUNNING.

1. Where the owner of a tract of land makes one part of it servient to another, by an alteration which is obvious and permanent, and then conveys one of the parts, his grantee takes such part benefited or burdened by the easement which the alteration created.

2. Three things are essential to the creation of an easement in this way: first, a separation of the title; second, that before the separation takes place, the use, which gives rise to the easement, shall have been so long continued and so obvious as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained.

3. A drain or other artificial water-course, being a thing which is continuous in its service and which can always be seen or known by inspection, will, on a severance of the tenement on which it exists, pass by implication, but a right of way, being a right which is enjoyed at intervals, leaving in the *interim* no visible sign of its existence, will not pass.

4. The degree of necessity which must exist to give rise to an easement by implied grant, is such merely as renders the easement necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made.

On final hearing on bill, answer and proofs taken in open court.

*Mr. Edward M. Colie,* for complainant.

*Mr. Joseph K. Field* and *Mr. James W. Field,* for defendant.

VAN FLEET, V. C.

The complainant claims a right of drainage through the land of the defendant, and this suit is brought to vindicate the validity of his claim. The right claimed, if it exists at all, is appurtenant to a tract of land which the complainant purchased of James M. Trippe in the spring of 1867. At the time of the complainant's purchase, Mr. Trippe owned a tract of land in the city of Orange containing about three acres, bounded on the north by a public way, now called Central avenue, on the east and south by land of Richard B. Harrison, and on the west by a natural stream known as Parrow brook. The complainant's purchase consisted of a strip fifty feet in width, lying within about ninety feet of the eastern boundary of the tract just described, and extending from the public way, now called Central avenue, to the land of Richard B. Harrison on the south. The great bulk of the land still held by Mr. Trippe, after the complainant's purchase, lay to the west of the strip purchased by complainant. Title to the land purchased by complainant was made to Charles Wiley on the 5th of March, 1867. Mr. Wiley advanced the purchase-money for the complainant, and took title to the land simply as security. The land in equity belonged to the complainant, and the legal title to it was conveyed to him on the 30th of May, 1874. The complainant erected a dwelling-house on the land in the early part of 1868, and took possession of it, with his family, in July of the same year, and has since resided there continuously.

The complainant, by his bill, alleges that for many years prior to his purchase, there had existed, as a means of drainage, an open ditch on the Trippe tract, running through its centre, and extending from its eastern boundary to Parrow brook; that it was there, serving as a drain, at the time of his purchase, and then constituted the only means of drainage which the land he purchased possessed, and was one of the principal reasons which induced him to purchase. He also says, that the ditch has, since his purchase, been continuously used as a means of drainage for his and the adjacent lands up until September, 1884, when the defendant wrongfully closed it at the point where it intersects

her land, and thereby caused his land to become flooded and greatly injured. The defendant acquired title in June, 1884, to that part of the Trippe tract lying next to Parrow brook. Her purchase embraced all the land of that tract lying next to Parrow brook and extending along Central avenue one hundred and seventy-seven and a half feet, and thence back to the land of Richard B. Harrison on the south.

The defendant does not deny that she obstructed and closed a ditch extending from the complainant's land to hers, but she does deny that, at the time of the complainant's purchase, a ditch existed on the Trippe tract, as an apparent and continuous means of drainage, but says, that the ditch which she closed was a subterranean drain, which the complainant and others constructed subsequent to his purchase. Her averment respecting the origin of the drain which she closed is this: She says, that the complainant and other persons who purchased parts of the Trippe tract, lying between the complainant's land and her land, so changed the natural surface of their lands, by filling and grading, after the complainant's purchase, as to cause the water which, prior to such change, flowed off evenly over the surface, to collect and stand on their lands, and that they then, in order to relieve their lands from the water thus collected, conducted the water to her' land, and there discharged it in bulk at one point. And this, she says, is the drain which she closed.

The evidence leaves no doubt respecting what the truth is, as to whether or not a ditch of the kind described existed on the Trippe tract prior to, and at the time of the complainant's purchase. The fact that there was a ditch there, at that time, and that it had existed there for a long time anterior to that date, is established, I think, beyond doubt. The natural formation of the land was such, as to render it almost certain that the water would make a channel for itself, at the point, where it is claimed the ditch existed. That was the lowest point in the Trippe tract, and the declivity of the adjacent lands on the north, east and south was in that direction. The natural condition of the land, adjacent to the ditch, was such as to render a ditch or drain, of some kind, indispensable to the reclamation of the land.

Some of the witnesses for the defence describe the land, forming the central part of the Trippe tract, as wet and marshy, and several of the complainant's witnesses say, that without a ditch that part of the tract would have been a pond. The water-shed to the east was sufficient in extent to render it certain, that in times of heavy rain and the melting of large bodies of snow, a large volume of water descended from that direction over the Trippe tract to Parrow brook. So that, from the natural configuration of the country, as well as from the original condition of the land itself, it would seem to be extremely probable, that there must have been, at a date prior to the complainant's purchase, a water-way of some kind through the Trippe tract, at or near the place where, it is alleged, this ditch existed.

The proof furnished, by the recollection of witnesses, of the existence of the ditch prior to, and at the time of the complainant's purchase, is of the most ample and convincing character. Richard B. Harrison, now over eighty years of age, and who has owned land adjacent· to the Trippe tract, on the east and south, since 1828, swears, that a run has existed through the middle of the Trippe tract ever since he can remember any-thing, and that he is positive that it was there while Edward Pierson owned that tract, and also while Barnabas Day owned it. This tract was conveyed by Pierson to Day in 1841, and by Day to Trippe in 1854. With regard to the origin of this run Mr. Harrison says, nature formed it first, but somebody cleaned it out afterwards. Fifteen other witnesses, who have been intimately acquainted with the Trippe tract for periods, extending from twenty to thirty years last past, swear positively to the existence of the ditch prior to the date of the complainant's purchase. They describe it as an open ditch, carrying water most of each year, seldom dry, three or four feet in width, about two feet deep, extending from the eastern boundary of the Trippe tract, through its centre, to Parrow brook. They also say, that when they first knew it, its appearance indicated that it had been in existence for many years; bushes, such as alders, briers, and other brushwood, were growing on its bank, showing a growth of several years, and also rendering the line of the ditch

plainly discernible almost all the way through the Trippe tract. Eight of them have resided on parts of the Trippe tract for periods, extending from nine months to near twenty years, and consequently have been in position to know, from daily observation, whether there was a ditch there or not. Two of them testify that they cleaned the ditch out, one in 1869 and the other in 1870. One, who purchased a part of the Trippe tract in 1867, says, that for two years after he erected his dwelling, he had neither well nor cistern, and that in the interval, the water he used for washing was very often obtained from the ditch. One of the fifteen swears, that he remembers that the ditch was in existence over twenty years ago, for about twenty years ago he, with other boys, caught fish in it by an unusual method. They erected a dam across Parrow brook, above the point where the ditch intersected the brook, thus causing the water in the ditch to flow rapidly and quickly, and they then went up the ditch and caught the fish which had sought refuge in the water collected in the depressions in the bed of the ditch. Another swears, that he remembers the ditch for more than twenty years, for, on one occasion, more than twenty years ago, he, in attempting to jump over it, fell into it and got wet. George Booth acquired title in 1868 to the land now owned by the defendant, and held it until 1884. He swears, that at the time he purchased, there was a brook running through the centre of the Trippe tract, from its eastern boundary to Parrow brook, and that it then had the appearance of being a permanent stream. There is other evidence, leading in the same direction, which it is unnecessary to mention.

The evidence on the part of the defendant fails, in my judgment, to break the case made by the complainant's proof at a single point. No proof whatever was offered, tending to show that a subterranean drain, as an original affair, had been constructed subsequent to the complainant's purchase. The whole of the proof offered on this point simply shows, that some of the lot owners have covered that part of the original ditch, which runs through their land with large flat stones, so as to make the passage from one part of their land to the other, across the ditch, easy and convenient. The defendant's proofs, on the main

Kelly *v.* Dunning.

·question, are of the most untrustworthy character. Eight persons, called by the defendant, testify that for some years prior to the complainant's purchase, and also subsequently, they passed over the Trippe tract frequently, but have no recollection whatever of seeing a ditch or drain of any kind there; and they also say, that they believe, that if a ditch had been there, of the kind described by the complainant's witnesses, they would have observed it, and would now recollect it. Another swears, that he farmed the Trippe tract from 1850 to 1854 or 1855, and that at that time there was no ditch running through it. On cross-examination he stated, however, that it was possible he was mistaken as to the location of the land which he farmed, and that it was possible the land which he farmed was located on the north side of Central avenue, and therefore not the tract in question. Another says, that he attended an auction sale of grass, in the summer of 1856, on the land in question, and then walked all over it, but saw no drain or ditch. He is positive that if one had existed there then he would have seen it. A clerk in the employ of the defendant's husband, swears, that about twenty years ago, he examined the Trippe tract carefully, for the purpose of deciding, whether or not, he should buy a lot there, and that he is sure there was no drain or ditch there at that time. Another witness says, that he was well acquainted with the Trippe tract in 1846, and for some years afterward, and that during that period no ditch or drain ran through it; but he also says he saw it again in 1868, and then there was a ditch there which had the appearance of having been in existence for some time. This summary gives every material fact put in evidence by the defendant. Estimating her proofs at their very highest value, it is clear, that they utterly fail to overcome the case made by the complainant. The defendant has attempted what has been attempted many times before, and that is to overcome a case, resting on the positive recollection of certain persons, by showing that others, who have either forgotten or never knew, do not remember what they first swear they do remember.

The fact is established, I think, beyond dispute, that for years prior to the complainant's purchase a ditch existed through the

Trippe tract, as a visible, necessary and continuous means of drainage, and was in use, for that purpose, at the time of his purchase, and continued to be so used for many years subsequent thereto. This being so, the legal question which the case presents is, Did a right or easement of drainage pass by the deed made by Trippe to Wiley in 1867? At the time this deed was made, Mr. Trippe held title to all the land lying between the land conveyed by this deed and Parrow brook, except a strip fifty feet in width, immediately adjacent. The principle is firmly established, that where the owner of a tract of land makes one part of it servient to another, by an alteration which is obvious and permanent, or apparent and continuous, and then conveys one of the parts, his grantee takes such part benefited or burdened by the easement or servitude which the alteration created. No easement or servitude exists, as a matter of law, while the unity of title continues, for no man can create an easement against himself in his own land, but the separation of the title creates, in such case, by implication of law, the relation of dominant and servient, and renders one part tributary to the other. A leading treatise on the law of easements states the rule on this subject as follows: "Upon the severance of an heritage by its owner into two or more parts, a grant will be implied, first, of all those continuous and apparent easements which have in fact been used by the owner during the unity, and which are necessary for the use of the tenement conveyed, though they have no legal existence as easements; and secondly, of all those easements without which the enjoyment of the severed portions could not be had at all." *Gale on Easements 49.* The reasons on which this rule rests, together with its limitations, are stated by the same author as follows: "It is true that, strictly speaking, a man cannot subject one part of his property to another by an easement, for no man can have an easement in his own land, but he obtains the same object by the exercise of another right, the general right of property; but he has not the less thereby permanently altered the quality of the two parts of his heritage. And if, after the annexation of peculiar qualities, he alien one part of his heritage, it seems but reasonable, if the alterations thus made

are palpable and manifest, and in their nature permanent changes in the disposition of the property, so that one part thereby becomes dependent upon another, that a purchaser should take the land burdened or benefited, as the case may be, by the qualities which the previous owner had undoubtedly the right to attach to it. This reasoning applies to those easements only which are attended by some alteration which is in its nature obvious and permanent; or in technical language, to those easements only which are apparent and continuous— understanding by apparent signs, not only those which must necessarily be seen, but those which may be seen or known on a careful inspection by a person ordinarily conversant with the subject." *Id. 52.* A more concise and lucid statement of this principle was made by Baron Martin in *Dodd* v. *Burchell, 1 Hurl. & Colt. 113.* He put it in such form as to give it a direct application to the case in hand. He said : " If a man has two fields, drained by an artificial ditch cut through both, and he grants to another person one of the fields, neither he nor his grantee can stop up the drain, for there would be the same right of drainage after the grant as before, since the land was sold with the drain in it." And Chancellor Zabriskie's statement of the principle is equally pertinent. He said : " If the owner of a tract of land, of which one part has had the benefit of a drain through or in the other part, sells either part, an easement is created by implication of law in or to the other part. And this is the case even if it is the servient part that is sold." *Denton* v. *Leddell, 8 C. E. Gr. 64.*

This principle has been repeatedly recognized and enforced in this state. *Brakely* v. *Sharp, 1 Stock. 9 ; S. C., 2 Stock. 206 ; Seymour* v. *Lewis, 2 Beas. 439 ; Fetters* v. *Humphreys, 3 C. E. Gr. 260 ; S. C. on appeal, 4 C. E. Gr. 471 ; Denton* v. *Leddell, supra ; De Luze* v. *Bradbury, 10 C. E. Gr. 70 ; Stuyvesant* v. *Woodruff, 1 Zab. 133 ; Central R. R. Co.* v. *Valentine, 5 Dutch. 561.* Three things are essential to the creation of an easement by this method : first, a separation of the title ; second, that, before the separation takes place, the use, which gives rise to the ease-

ment, shall have been so long continued and so obvious or mani-
fest as to show that it was meant to be permanent; and third,
that the easement shall be necessary to the beneficial enjoyment
of the land granted or retained. An easement which is apparent
and continuous, such as a drain or other artificial water-course, a
thing which is continuous in its service, and can always be seen
or known on careful inspection (*Seymour* v. *Lewis, 2 Beas. 439 ;*
*Fetters* v. *Humphreys, 3 C. E. Gr. 260; Denton v. Liddell, 8 C. E.*
*Gr. 64 ; Pyer* v. *Carter, 1 Hurl. & Norm. 916 ; Ewart* v. *Coch-*
*rane, 7 Jur. (N. S.) 925*), will pass on the severance of two tene-
ments, as appurtenant, without the use of the word "appurtenan-
ces," but an easement which is not apparent and not continuous,
such as a right of way, which is enjoyed at intervals, leaving no
visible sign, in the *interim,* of its existence, will not pass unless
the grantor uses language sufficient to create the easement *de
novo. Fetters* v. *Humphreys, 4 C. E. Gr. 471.* While our
adjudications (*Brakely* v. *Sharp ; Stuyvesant* v. *Woodruff,* and
*Fetters* v. *Humphreys, 3 C. E. Gr. 260*) declare that no ease-
ment will arise by implication, in such cases, unless necessary to
the beneficial enjoyment of the land granted or retained, they do
not expressly define the degree of necessity which must exist.
Two of the English cases, however, do. They hold, that if the
easement is necessary for the convenient and comfortable enjoy-
ment of the property, as it existed at the time the grant was
made, it will pass. *Ewart* v. *Cochrane, 7 Jur. (N. S.) 925 ; Pyer*
v. *Carter, 1 Hurl. & Norm. 916.* This rule seems to me to be so
eminently reasonable and just that its adoption is necessary to
give full effect to the principle of which it is an adjunct.

There can be no doubt, therefore, that the complainant, when
he acquired title to part of the Trippe tract, also, by force of
this legal principle, acquired a right of drainage over the re-
mainder of that tract lying to the west of his land. Nor can it
be doubted that the complainant's injuries are the proper subject
of equity cognizance. The defendant's act results in inundating
the complainant's land with water, whenever snow melts, or a
rain of a few hours' duration occurs, thus rendering the occupa-
tion of his dwelling uncomfortable, unhealthy and dangerous.

That it is the duty of this court to redress injuries of this nature, without requiring the person aggrieved, before seeking the aid of equity, to establish his right by suit at law, is authoritatively settled.  *Hart* v. *Leonard, 15 Stew. Eq. 416.*

The complainant is entitled to a decree compelling the defendant to remove the obstructions which she has placed in the ditch, and to restore the ditch to the condition in which it existed, at the time his right to its use accrued, and to refrain in the future, from all acts which will deprive the complainant of its full enjoyment for all proper purposes.  The complainant is also entitled to costs.