This is an action to try the right or title to an easement, and to remove a cloud which rests upon it because of an adverse claim, which is asserted by the defendant.
In the year 1908, and prior thereto, A. A. Fain owned a lot in the town of Murphy. Upon one part of the lot there was a three-story brick building, the third story of which was leased to the defendant Cherokee Lodge, at which time access to the third story was by means of a stairway on the outside of the building, over the vacant part of the lot adjoining the same, and which was owned by A. A. Fain, which led to a hall on the second floor of the building, and thence up an inside stairway in the hall to the third story.
On 7 July, 1908, while the defendant Cherokee Lodge (740) had the third story leased, and was using the same as a Masonic hall, access thereto being by said stairways, A. A. Fain and wife conveyed the third story of the building, "together with the right to keep, use, and enjoy a stairway, substantially as now placed in the building, with full, free, and proper ingress, egress, and regress to said third story, etc., to defendant Cherokee Lodge, *Page 791 
and contracted and agreed that their heirs and assigns shall keep up and maintain, at their own expense, the stairways in the building leading to the third story."
From the making of the deed in the year 1908, the Masons have occupied the third story of the building under it, and have at all times used the stairways, as above described, and are now using the same. A. A. Fain continued to own the adjoining lot, and the lot on which the three-story brick building stood, until a short time before the commencement of this action, when he sold both lots, and as defendant contends, subject to the easement or right of defendant to use the stairway over the vacant lot. From the time the third story, together with the right of ingress, egress, and regress by way of said stairways was conveyed by A. A. Fain to the Cherokee Lodge, in the year 1908, it was understood by all parties, as defendant contends, that the lodge was the owner of an easement in said stairway over the adjoining lot, and this ownership was not questioned, but was recognized, until some time in the year 1920, being more than twelve years after the conveyance was made to the lodge by A. A. Fain, and about two years after plaintiff bought the vacant lot, and then it was only questioned by the plaintiff, the purchaser of the property to which the easement was attached, and then only after he had failed to make payment of the balance of the purchase price of the lot and the same was advertised under the deed of trust that plaintiff Meroney had given as security for the balance due on the purchase price for the lot, and defendant contends that this question was not at this time made bona fide, but was raised for the purpose of delaying the collection of the purchase money, as plaintiff enjoined the trustee from collecting the money under the deed of trust. (This not being material.)
It was not disputed that A. A. Fain was the owner of the entire land embracing both lots, when he made the deed to Cherokee Lodge in 1908, and there was no dispute that the stairway in question was exactly the same when the deed was made in 1908 as it was on the day plaintiff brought his action, and it was not denied that the stairway had been kept and maintained all the time in the same place, manner, and condition as when the conveyance was made in the year 1908, nor that the defendant, under the deed, took charge of the stairway and used the same all the time since the deed was made, and that it is now using the same, and that plaintiff bought the vacant lot in 1918 with said stairway upon it, and with the knowledge that the defendant was using the stairway in (741) the same condition as it was when Fain conveyed the property.
The following are the provisions in the deed to the defendant of *Page 792 
A. A. Fain and wife, under whom plaintiff claims both lots: This deed conveys the land in fee, "together with the right to keep, use, and enjoy a stairway substantially as now constituted in said building, and full, free, and proper ingress, egress, and regress to said third story; the unreserved and unrestricted right to have, use, and enjoy the third story of any building that may in future be erected on said lot, with said rights of ingress, egress, and regress thereto and therefrom; and also the full and unrestricted right to have, erect, use, maintain, and enjoy the second story of any building in the future erected on said lot thereon of less height than three stories by the grantors, their heirs or assigns, including the right to build above any building that may be erected on said lot one story, for a lodge room and ante-rooms, with full rights of egress, ingress, and regress as aforesaid." That they are seized in fee of said premises, and have a right to convey the same in fee simple; that the same are free from incumbrances, that they will, and their heirs, administrators, and executors shall forever warrant and defend the title to the said land and premises, with the appurtenances, unto the said party of the second part, heirs and assigns, against the lawful claims of all persons whomsoever. And it is covenanted and agreed between the parties to these presents that the said parties of the first part, and their heirs and assigns, shall keep up and maintain, at their own expense, the stairways in said building leading to said third story, and suitable and convenient stairways in any building in future erected on said lot."
It was agreed by the parties that the presiding judge might hear the case without the aid of a jury, and it was stated by counsel for both parties that the matter to be tried was a question of law for the court to decide, but the judge stated that he would have a jury impaneled to the end that he might submit an issue of fact, if any should arise.
The court rendered the following judgment:
This cause coming on to be tried by the court and a jury, counsel for the parties make the following admissions: "It is admitted that on 7 July, 1908, A. A. Fain was the owner of the lands described in plaintiff's complaint. It is further admitted that A. A. Fain was the owner of the adjoining lot known as the `Hardware Lot,' described in the deed from A. A. Fain and wife to Cherokee Lodge, No. 146, dated 7 July, 1908, which was duly recorded. Defendant's counsel say they admit that the plaintiff owns the lot described in the complaint, subject to the easement in the stairway set up in the defendant's answer." It was further agreed that the court might find the facts and apply the law and render judgment, but the court stated *Page 793 
that it would submit an issue to the jury if the court saw fit to do so, and did submit the following issue, viz.: "1. (742) Does the defendant own an easement in the stairway on the lot described in the complaint?" and, under instructions of the court, after hearing the evidence and argument, and, in view of said admissions, the jury having answered the issue "Yes"; it is now, on motion of attorneys for defendant, considered and adjudged by the court, that the defendant Cherokee Lodge, No. 146, A. F. and A. M., is the owner of the easement in the stairway on the land described in the complaint, as set up in the answer in this cause, and is entitled to use and enjoy said easement under its right and title thereto, the same not being a cloud on plaintiff's title, and it is further adjudged that the defendant have and recover its costs in this action incurred, to be taxed by the clerk.
Plaintiff excepted and appealed.
After stating the case: There was evidence in this case which very strongly tended to show that the lodge never paid any rent nor gave any other consideration for the use of the stairway, but has continued to use it from the beginning without let or hindrance. W. W. Woodbury testified: "There is no other means of ingress and egress to and from the lodge other than this stairway. It is about four feet wide." There was no other way to and from the third story of the building which defendant had any right to use except the stairway in question. There was an elevator in the building from the ground floor to the second story, but it belonged to the hardware company, and was not, in law or in fact, usable by the defendant as a way, or part of the way up and down. The plaintiff himself testified: "I knew the lodge had been using the stairway, and had used it as a member myself. I brought suit to restrain the sale of that lot under deed of trust to Jarrett, after default on my part as to the note, which I refused to pay when due. Up to that time I had never made any claim to the lodge about the stairway, and had not spoken to any member or officer of the lodge with reference to quitting its use. I set up this claim last year. The second consideration in bringing this suit is to obtain a diminution in the purchase price. I made no demand upon any one for that stairway until after my property was advertised for sale." It will be seen, therefore, that the present claim is the result of an afterthought, the plaintiff having no real excuse, in reason or justice, for his present attitude. *Page 794 
But we deem it clear that his position, now assumed, is indefensible in law, and, besides, that his conduct has been such, with reference to the use of the stairway, as to indicate that he believed (743) all the time, and until he was pressed for the payment of a debt, that he had, by his deed and the outward, visible, and undeniable circumstances and surroundings attending its execution, conveyed the easement for the use of the stairway with the land itself, and as incident and appurtenant thereto. The third story of the building would have been worthless to the defendant, without the privilege of using the only way for ingress and egress, which was essential to its reasonable enjoyment. We held in Carmon v. Dick,170 N.C. 305-308, that there are three things necessary to the creation of an easement upon the severance of an estate, where the owner, before the severance, made or used an improvement in one part of the estate for the benefit of another. First, there must be a separation of the title; second, it must appear that before the separation took place the use which gives rise to the easement shall have been so long continued and so obvious or manifest as to show that it was meant to be permanent; and third, that the easement shall be necessary to the beneficial enjoyment of the land granted or retained. An easement which is apparent and continuous, such as a drain or other artificial watercourse, a thing which is continuous in its service, and which does not require any active intervention of the owner for its continuance, and can always be seen or known on careful inspection, will pass on the severance of two tenements as appurtenant, without the use of the word "appurtenances"; but an easement which is not apparent and continuous, such as a right of way, which is enjoyed at intervals, leaving no visible sign, in the interim of its existence, will not pass unless the grantor uses language sufficient to create the easement de novo: Jones on Easements, sec. 145; Kelly v. Dunning,43 N.J. Eq. 62; 26 Pa. 438. It was said by Justice Earle that there is a distinction between an easement, such as a right of way or easement used from time to time, and an easement of necessity, or continuous easement, which the law recognizes, and it is clear that upon a severance of tenements an easement used as of necessity, or in its nature continuous, will pass by implication of law without any words of grant; but with regard to an easement which is used from time to time only, it will not pass, unless the owner, by appropriate language, shows an intention that it should pass. Polden v. Bastard, 4 B. S. 258 (S.C. L. R., 1 Q.B. 156). A way of necessity is founded upon an implied grant, the necessity of itself not creating the right; but being only a circumstance resorted to for the purpose of showing the intention of the parties, and thereby raising the implication *Page 795 
of a grant. This right is created by the change of ownership of a portion of an estate, the latter having attached to it by construction, as an incident, a right of way over the ungranted portion, this being presumed to have been the intention of the parties. Jones on Easements, sec. 304, thus states this view: "This (744) is an application of the maxim that one is always understood to intend, as an incident to a grant, what is necessary to give effect thereto which is in the grantor's power to bestow. The rule applies when there has been a severance of the property, one portion of which has been rendered inaccessible except by passing over the other or by trespassing on the lands of a stranger. When a landowner conveys a portion of his lot the law will not presume it to have been the intention of the parties that the grantee shall derive no beneficial enjoyment thereof in consequence of its being inaccessible from the highway, or that the other portion shall, for like reason, prove useless to the grantor. This species of right of way, therefore, in the absence of anything to the contrary contained in the deed, becomes an incident to the grant as indicative of the intention of the parties." As to what should be the degree of necessity in order to create this right by implication based upon the presumed intention of the parties, it was said in Kelly v. Dunning, supra, that the right must be necessary to the beneficial use of the land granted or retained, and to its convenient and comfortable enjoyment, as it existed at the time of the grant; this rule being deemed as eminently reasonable and just, and its adoption as essential, that full effect may be given to the principle of which it is an adjunct. Chancellor Kent said in his Commentaries, at 467: "Some things will pass by the conveyance of land as incidents appendant or appurtenant thereto. This is the case with a right of way or other easement appurtenant to land. And if a house or store be conveyed, everything passes which belongs to and is in use for it, as an incident or appurtenance." It was held in Hair v. Downing, 96 N.C. 172-175, that the servitude of the one (tract of land) to the other, existing when both belonged to one owner, remained when the severance was effected by the different conveyances. The easement passed with the legal estate in the tract to which it adhered, and in the like plight was the servient tenement conveyed to the plaintiff, whose rights, especially after full notice, cannot be superior to those of his grantor.
Where one having two tenements, and a gutter from one of them ran over or across the other, sold one tenement to one and the other to another, it was held that the easement and servitude of the gutter passed with the respective estates by the form of the grant. Cope's case, Year Book, 11 Hen. VII. 25. So where the owner built an aqueduct *Page 796 
from a spring on his land to his dwelling, and granted the dwelling, the easement passed with it. Nicholas v. Chamberlain, Cro. Jac. 121; both of the above cases are cited in Washburn on Easements, with other cases, at page 49 and following. In Gould on Waters, page 354, the doctrine is thus declared: "A grant by the owner of a tenement of part of that tenement, as it is then used (745) and enjoyed, passes to the grantee by implication, . . . as also those easements which the grantor can convey, and which are necessary to the reasonable enjoyment of the granted property, and have been, and are at the time of the grant, used by the owner of the entirety for the benefit of the granted tenement." So it is said by another author, that where the terms of a grant are general or indefinite, so that its construction is uncertain and ambiguous, the acts of the parties contemporaneous with the grant, giving a practical construction to it, shall be deemed to be a just exposition of the intent of the parties. Angell on Water Courses, p. 363, and cases cited in note 1, and among them Jonnison v. Walker, 11 Gray 426; and Woodcock v. Estey, 43 Verm. 522. The effect of a conveyance of land, with the attaching easements, in transferring them, also is ruled in a similar way in Lampman v. Milks, 21 N.Y. 505; the court declaring that the diversion of a natural stream into an artificial channel for relief from overflow, and the land in that condition being sold to different persons, they each take their respective estates, benefited or burdened with the easement. The same doctrine is recognized in Shaw v. Etheridge, 3 Jones 300. The suit there was for obstructing a ditch, and the outflow of water from the plaintiff's land through it. The defendant, when owning both, had cut the ditch, and then sold the lower tract to the plaintiff. The court charged that if the defendant obstructed the ditch after he sold to the plaintiff, or if additional obstructions were placed in the ditch so as to impede the flow of water from plaintiff's land, he was entitled to damages, and this charge was sustained.
These views are substantially stated and approved by this Court in Hairv. Downing, supra, and the principles there applied coincide with those we laid down in Carmon v. Dick, supra, the two cases being closely analogous.
This case is stronger for the defendant, if it is possible for it to be so, than any of the cases we have cited were for the parties therein, who claimed the easements by implication. The deed we are considering does not use the word "appurtenances," in the premises of the deed, but this is not essential to the existence of the easement, under the facts and circumstances of this case, as the easement of using the stairway, for access to and exit from the upper stories of *Page 797 
the building, was not only "open and visible" at the time of the conveyance to the defendant, but manifestly intended by the plaintiff to pass with the land as essential to its enjoyment. It could hardly be more so.
The word "appurtenances" is used in the warranty and while this is not the appropriate part of the deed for a conveyance of an easement, it throws light upon the previous clauses of the instrument, if there is any ambiguity in them. The modern doctrine, that a deed must be construed as a whole, or by spreading it out before us so that we see it by its four corners, was adopted by us (746) many years ago, one of the earlier cases being Kea v. Robeson,40 N.C. 373, which was later followed by Gudger v. White,141 N.C. 507, where the rule was exhaustively considered and the former cases fully cited. It was there said that we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed, and to construe it consistently with reason and common sense. It there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument, "after looking," as the phrase is, "at the four corners of it." And again, that words should always operate according to the intention of the parties, if by law they may, and if they cannot operate in one form, they shall operate in that which by law will effectuate the intention. This is the more just and rational mode of expounding a deed, for if the intention cannot be ascertained, the rigorous rule is resorted to from the necessity of taking the deed most strongly against the grantor. That case was followed by Bryanv. Eason, 147 N.C. 284, where this sensible and liberal canon of interpretation was approved and applied in the construction of three deeds, which were considered as parts of one indivisible transaction, for the purpose of deciding what estate was conveyed thereby. After this came Triplett v. Williams, 149 N.C. 394, and still later on,Beacom v. Amos, 161 N.C. 357, where all the intervening cases are collected and some of them reviewed. Justice Story in Tiernan v.Jackson, 5 Peters (U.S.S.C.) 58, stated the principle to be that whatever may be the inaccuracy of expression, or the inaptness of the words used in an instrument, in a legal view, if the intention to pass the legal title to property can be clearly discovered, the *Page 798 
Court will give effect to it, and construe the words accordingly. Jones on the Law of Real Property asserts that the inclination of many courts at the present day is to regard the whole instrument without reference to formal divisions. The deed is so construed, if possible, as to give effect to all its provisions, and thus effectuate the intention of the parties. When an instrument is informal, the interest transferred by it depends not so much upon the words and phrases it contains as upon the intention of the parties as indicated by the whole instrument. Vol. 1, sec. 568.
If we construe the deed in question under this well established rule, we are of the opinion that the deed, on its face, keeping all of its provisions distinctly before us, clearly indicates the (747) intention of the parties to have been, at the time it was executed, that the use of the outer stairway should pass to the grantee.
We therefore hold that the claim of an easement in the stairway is no cloud upon plaintiff's title, and that the verdict and judgment were correct.
No error.
Cited: Bank v. Vass, 184 N.C. 301; Blankenship v. Dowtin, 191 N.C. 794;Lee v. Barefoot, 196 N.C. 114; Ferrell v. Trust Co., 221 N.C. 435;Smith v. Moore, 254 N.C. 190.