## WOODCOCK & VINTON *v.* JACOB ESTEY.

### *Water. Spring. Deed. Reservation. Description.*

The plaintiffs derived whatever title they had to the spring in question through a chain of deeds from a conveyance in 1827 of the land upon which the spring is located. This deed contained a reservation of said spring and certain land about it and rights in respect to its use and enjoyments. The defendant derived his title from the same source through a chain of conveyances of the property and rights so reserved. Previous to said original conveyance the grantors had made a perpetual lease of the same premises with reservations in respect to said spring. *Held* that, under the circumstances of the case, the rights of the parties to the spring depended upon the construction of said deed of 1827, unaffected by the prior lease. *Held* also that as the reservation in said deed was sufficiently explicit to be used to constitute a good and valid conveyance of the property and rights so reserved, the plaintiffs obtained no title to the spring, therefore could maintain no action for a diversion of the water, without regard to what the defendant's rights were.

But as said reservations provided for "relaying the logs or pipes for the conveyance of said water and repairing them at pleasure at all times hereafter," it was *held* that the defendant was confined, in his right to repair and relay the logs or pipes, to the same place where the aqueduct was then laid; and having laid an aqueduct, in a different place, through the plaintiff's land, though in the same general direction, the defendant is liable for such trespass.

W. became the owner of all the rights in said spring as reserved in said deed, and used the water therefrom in his water-cure establishment, and upon his decease his wife succeeded to his rights and property, and in a mortgage, after describing the lot on which

the main building of the water-cure establishment stands, proceeds thus: "comprising all the land and buildings heretofore occupied by my late husband, Dr.• Robert Wessel-hœft, for the purpose of a water-cure establishment, together with all the water and springs used," &c. *Held* that this description covers the spring in question, as owned and used by Dr. Wesselhœft.

Where a spring has been set out and separated from other lands by the owner, so as to extend three rods each way from the central portion covered by the water, it is *held* that under the word "spring," in a deed, the land so set out and separated to be used with the spring would be conveyed.

TRESPASS on the freehold with counts in case. Plea, the general issue, and trial by jury, April term, 1870, BARRETT, J., presiding.

The plaintiffs seek to recover of the defendant for an alleged diversion of the water of a certain spring in Brattleboro, located near " Whetstone Brook," about one quarter of a mile above the site of plaintiffs' paper-mill, the machinery of which is propelled by water taken from said brook by a canal, and conveyed to plaintiffs' mill. This spring issues from the earth some eight rods southerly from plaintiffs' canal, and discharges about six gallons per minute, the amount varying little at different seasons. Both parties claim title to the spring.

The plaintiffs derive whatever title they have to this spring from Joseph, Henry, and Rufus Clark, who conveyed a tract of land upon which this spring is located to Joseph Fessenden and John C. Holbrook, by deed dated December 29, 1827. Holbrook and Fessenden's title was transmitted through various grantees, until it ultimately lodged in N. B. Williston, who conveyed to plaintiffs, April 27, 1852.

The various deeds in plaintiffs' chain of title show that they all, either in express terms, or by necessary implication, refer the several grantees to the deed of December 29th, 1827, for a description of the premises conveyed.

The deed under which the plaintiffs derive title, dated December 29, 1827, after describing by metes and bounds, courses and distances, a tract of about six acres, on which the spring in controversy is located, contains an exception or reservation as fully set forth in the opinion.

The plaintiffs' evidence tended to show that the water of this spring supplied the dwelling-house and barn of the Clarks at the

time said deed and the lease hereafter referred to were executed, and from that time until about the year 1831, when the southern aqueduct, so called, was constructed, and from that time until 1868, the water of said spring continued to flow into said canal, and was valuable by reason of its purity in the manufacture of the finer qualities of paper, and for the purpose of propelling the machinery of said paper-mill; and while the water ran to Clark's premises, the waste water ran into plaintiffs' canal and pond.

Joseph Clark deceased prior to 1847, and had conveyed all his real estate to his sons Rufus and Henry by deed conditioned for his support during life, on the 23d of February, 1825, and said Henry and Rufus performed the conditions of the deed, and thereby the title became absolute in them, before the deed to Robert Wesselhœft.

January 23d, 1847, Henry and Rufus Clark conveyed to Robert Wesselhœft " all that track of land with the spring or fountain thereon, and all the rights and appurtenances thereunto belonging, and all the rights and privileges and immunities of every name and nature which were reserved by Joseph, Henry, and Rufus Clark, to themselves, their heirs, executors, administrators and assigns, in a certain deed made by them to Joseph Fessenden and John C. Holbrook, bearing date December 29, 1827, and recorded," &c.

Robert Wesselhœft took possession of this spring under his deed, and used and improved it in connection with his water-cure establishment, from 1847 to his death, when his widow Ferdinande Wesselhœft, to whom he devised all his real estate, succeeded to his possession and retained it until the foreclosure of a mortgage, given by her to the Windham Provident Institution for Savings, March 20th, 1854.

The description in the mortgage was as follows:

A certain piece or parcel of land, situate, lying or being in the East village of Brattleboro aforesaid, bounded south by Elliot street, west by the road leading from said street to Franklin H. Wheeler's dwelling-house, north on land of said Wheeler, and east on Church street, comprising all the land and buildings heretofore occupied by my late husband, Dr. Robert Wesselhœft, for the purposes of a water-cure establishment, together with all the

water and springs used in connection with said establishment, paths, douche houses and baths used in connection therewith, and all the pipes, logs and reservoirs by and through which said water is conveyed to said establishment.

The Windham Provident Institution, after the title had become absolute under a decree of foreclosure of said mortgage, on the 18th day of January, 1859, conveyed all the estate covered by said mortgage to Cole, Francis and Salisbury. March 9th, 1859, Salisbury & Cole conveyed their interest to Francis. April 8, 1866, Francis conveyed an undivided half to John Knowlton.

March 16, 1868, Francis & Knowlton executed a deed of warranty, in the usual form, to Jacob Estey, the defendant, and his partners, J. J. Estey and L. K. Fuller, describing the premises conveyed as follows: "A certain spring or fountain, with the · land adjoining to the distance of three rods each way from said fountain, together with all the privileges and appurtenances to the same belonging, particularly described in a deed from Joseph, Henry, and Rufus Clark to Joseph Fessenden and John C. Holbrook, dated December 29, 1827, meaning hereby to convey the spring or fountain, land and privileges, reserved in said deed by said Clarks to them, their heirs and assigns. Reference being had to the reservations particularly named in said Clarks' deed, &c., which spring, fountain, land, &c., were afterwards conveyed by Henry and Rufus Clark to Robert Wesselhœft."

It was admitted by defendant, that after his purchase of said spring from Francis & Knowlton, and on or about the 10th day of June, 1868, he and his partners built a curb or box around said spring and dug a ditch from said spring in an easterly direction across and through plaintiffs' land for a distance of about 23 rods to the highway, and thence to their Main street factory. That in doing so they did no unnecessary damage to the plaintiffs' land, but this ditch so dug by defendant did not follow the line of the aqueduct that conveyed the water to Clark's house and barn in 1826 and 1827. That defendant laid a pipe in this ditch sufficiently large to carry about one half a gallon of water per minute. That defendant also laid another pipe, in a ditch dug for the purpose, from the spring in a northerly direction to his Flat street

factory. But in digging this ditch he did not dig upon any lands of the plaintiffs, provided the exception or reservation in the deed from Joseph, Henry, and Rufus Clark to Holbrook & Fessenden, and the subsequent conveyances, are operative to vest the title to said spring and the land three rods each way from it in defendant and his co-grantees.

No claim was made by the plaintiffs that the defendant's use of the water of this spring was not reasonable and proper, provided he had any right to use it at all.

Prior to the execution of said deed of December 29, 1827, under which both parties derive title, Joseph, Henry, and Rufus Clark, executed a perpetual lease, dated August 7th, 1826, to John Holbrook, (the father of John C.,) and Joseph Fessenden. This lease is in the form of an indenture. Its purpose was to give to Holbrook & Fessenden, 1st, a strip of land sufficient for a passage way from the street to the canal they were about constructing, to take water from the brook to their paper-mill. 2d, the right of constructing and keeping in repair this canal, which it was stipulated should not exceed five feet in width, except in difficult places. 3d, the right to use and improve such springs of water as were to be found on the side hill between the brook and road, always excepting the spring in controversy. In the clause of this indenture, which gives to the lessees the right to dig the canal, is found the following stipulation : " Not to interfere with, or injure the springs or fountains now used and improved by the said Joseph Clark, for supplying him with water, or the aqueduct, logs or works for conveying the same to his house and barn." And in a subsequent clause, by which the right to use and improve the springs on the side hill is granted, is this exception : " Always excepting the springs and fountains improved as aforesaid, by said Joseph Clark, which are not to be drained or injured, and the ground or earth for three rods each way from said last mentioned springs or fountains is not to be dug or disturbed."

The court held that as both parties derived title from the Clarks, their respective rights to said spring must depend upon the construction of said deed, unaffected by the lease of Aug. 7, 1826 ; and that said deed did not operate to convey said spring,

and the land about it for three rods each way, from said Clarks to Holbrook & Fessenden, but on the contrary the legal effect of said deed was to except from its operation said spring and land about it.

The court also held that the deed from Henry & Rufus Clark to Robert Wesselhœft did convey a right to said spring and the use of its water and a title to the land so excepted and reserved in the deed from the Clarks to Holbrook & Fessenden. And it being conceded that the water of this spring was used by Robert Wesselhœft in connection with his water-cure establishment from 1847 to his death, and by his widow Ferdinande Wesselhœft afterwards, that said mortgage deed to the savings bank covered and included said spring ; and that the said defendant having all the title which Wesselhœft had, he had the right to use and appropriate the water of said spring as the evidence showed he had done, except so far as going upon plaintiffs' land and digging outside of the reservation was concerned, to all which rulings the plaintiffs excepted.

The court further held, *pro forma*, that the defendant was a trespasser in digging his ditch outside the three rod reservation, and that for this act the plaintiffs would be entitled to recover at least nominal damages, to which ruling the defendant excepted.

After these several rulings of the court, the plaintiffs declined to go to the jury, and thereupon a verdict was directed for plaintiffs to recover nominal damages, with leave to both parties to except. Exceptions by both parties.

*H. E. Stoughton* and *Field & Tyler*, for the plaintiffs.

*Charles N. Davenport*, for the defendant.

The opinion of the court was delivered by

Ross, J. The title to the spring in controversy was originally in Joseph, Henry, and Rufus Clark. Both the plaintiffs and defendant claim title from them through several conveyances. The Clarks executed a lease to John Holbrook and Joseph Fessenden, August 7, 1826. They also conveyed by deed to Joseph Fessenden and John C. Holbrook, December 29, 1827.

The county court held that the rights of the parties to the spring depended upon the construction of the deed of December 29, 1827, unaffected by the lease. We think in this there was no error. Joseph Fessenden and John C. Holbrook, in conveying the title, which has come to the plaintiffs, attempted to convey, and did convey, only the rights and premises which they acquired under the deed of December 29, 1827. The intermediate conveyances are limited to what was acquired under that deed by Fessenden and John C. Holbrook. John C. Holbrook and John Holbrook are different individuals, but the Joseph Fessenden named in the lease is the same Joseph Fessenden named in the deed. The rights to the premises which Joseph Fessenden may have acquired by the lease, if any, are immaterial to the determination of the question in this case, inasmuch as he has not attempted to convey anything, other than what he acquired under the deed of December 29, 1827. The plaintiffs stand related to the spring and aqueduct, under the conveyances, in the same manner as did Fessenden and Holbrook by virtue of the deed of December 29, 1827. In that deed is the following exception : " Always excepting and reserving to themselves, their heirs and administrators, the following rights, privileges and immunities : The spring or fountains from which the water is now conveyed to said Clark's house, also the land adjoining to the distance of three rods each way from said fountain, also the right or privilege of free ingress, egress and regress at any and all times to the aqueduct that conveys the water from said spring to said house, and the privilege of digging, altering and making embankments, as they may think proper or necessary for the security of said aqueduct and spring or fountain, and of relaying the logs or pipes for the conveyance of said water, and repairing them at pleasure, at all times hereafter, and also the right of passing to and from said spring and aqueduct from the highway, for the purpose of taking the water from said aqueduct opposite or nearly opposite to Noah Fisher Jr.'s dwelling-house, at such place as the said Joseph, Henry, and Rufus, their heirs and assigns, may think proper, they taking care not to expose or injure said land ; " " and also reserving, as aforesaid, the right and privilege of a way to the

66

pond, on land conveyed by this deed, for watering the stock and cattle of the said Clarks;" " and the said Joseph Fessenden and John C. Holbrook, their heirs and assigns, are not to injure or damage the said spring or fountain, or aqueduct now laid, or to be laid hereafter, to and from said spring ; but the full and safe right is retained and reserved of using and improving the same as aforesaid forever hereafter."

This language clearly and explicitly excepts the spring, the land three rods each way from the spring, and the aqueduct, from the operation of said deed.    If the Clarks had conveyed the spring, surrounding lands and aqueduct, using the same language, the grantee would have obtained a good title to the same, by every rule of construction.    No greater definiteness or nicety of expression is necessary to create an exception from the operation of a deed than is required to make a good and valid conveyance. 2 Washburn on R. P., 639, 640.    The plaintiffs have therefore obtained no title to the spring, or the land for three rods around the same, or the aqueduct conveying the water from said spring, in 1827, to the Clark buildings ; and as they must show a right to the spring to maintain an action for a diversion of water, this disposes of that branch of the plaintiff's case, without inquiring in regard to the defendant's title to the same.

But the plaintiffs also claim damages occasioned to their land by the defendant's digging and laying an aqueduct on their land outside the limits reserved in the deed of December 29, 1827.   For this injury the county court held the plaintiffs might recover, and we think correctly.   In thus deciding we have no occasion to controvert the doctrine urged by the defendant's counsel, that the grant of a thing impliedly carries with it that which is necessary for the beneficial enjoyment of the thing granted ; for no such enlargement by implication is demanded where the grant, in and of itself, contains all that is necessary for the beneficial use of the thing granted.   If A. grants to B. a spring of water in the centre of A.'s field, and makes no provision by which B. can lay an aqueduct to the spring, the grant would by implication carry with it to B. the right in a reasonable and proper manner to lay an aqueduct across A.'s field to the spring.   But if, in making the grant

of the spring, A. had marked out a particular place in which B. could lay down an aqueduct and convey the water from the spring, B. would have no right to lay an aqueduct to the spring in any other place, though it might be more convenient for B. to do so than to lay it in the place pointed out in the deed. In the one case, the parties to the deed not having fixed upon any place for conveying the water from the spring, the law interprets the grant to mean that B. shall have a proper and reasonable place for conveying away the water ; but in the other case, the parties having interpreted and limited the grant and fixed the place for conveying the water from the spring, there is nothing left for interpretation or implication by the court, and the court have only to enforce the grant as agreed upon by the parties. The exception in the deed from the Clarks to Fessenden & Holbrook provides for "relaying the logs or pipes for the conveyance of said water and repairing them at pleasure at all times hereafter." This extended across the land then conveyed by them, and confined their right to repairing and relaying the logs or pipes. This evidently means at the same place where the aqueduct was then laid. If the defendant has succeeded to the spring and the rights of the Clarks excepted from the conveyance of December 29, 1827, he has the same right the Clarks had, to relay the aqueduct in the place where it was then laid, but no other or greater right. He has laid his aqueduct at a different place, though in the same general direction, and for this he is liable whether he owns the spring or not.

These views are decisive of the case without inquiring whether the defendant has succeeded to the rights excepted by the Clarks from their deed of December 29, 1827. But as that question has been discussed, we have considered it. No question is made but that the title of the Clarks to the spring has passed to Mrs. Wesselhœft ; but it is claimed she did not convey it by her mortgage to the Windham Provident Institution for Savings. If her mortgage conveyed this spring and premises, then the defendant has the title to the premises which the Clarks excepted from the operation of their deed to Fessenden & Holbrook. Dr. Robert Wesselhœft had erected douche and bath houses in the immediate

vicinity of this spring and used them, supplied with the water from the spring, in connection with, and as a part of, his water-cure establishment, which was situated at a little distance from the spring, and separated from it by lands owned by other parties.    Mrs. Wesselhœft in the mortgage, after describing the lot on which the main building stands by metes and bounds, proceeds thus :  " Comprising all the land and buildings heretofore occupied by my late husband, Dr. Robert Wesselhœft, for the purposes of a water-cure establishment, together with all the water and *springs used in connection with* said establishment, paths, douche houses and baths used in connection therewith," &c.    This description does not confine the springs conveyed to those whose waters had been conveyed to the main building, standing on the first described piece of land, but covers all that had been used by Dr. Wesselhœft in connection with said establishment.    We think this description covers the spring in question and conveys it.    By the general term spring, so much land is conveyed as is reasonably occupied by the spring, and its embankments, as was decided in *Mixer* v. *Reed*, 25 Vt., 254.    Where a spring has been set out and separated from other lands by the owner, so as to extend three rods each way from the central portion covered by the water, we think under the word " spring " the land so set out and separated from the other lands to be used with the spring would be conveyed.  2 Washburn on R. P., 623.    This construction gives to the defendant the same rights and premises excepted by the Clarks from the operation of their conveyance of December 29, 1827.

Judgment affirmed.