VERMONT SUPERIOR COURT

Orange Unit
5 Court Street
Chelsea VT 05038
802-685-4610
www.vermontjudiciary.org

CIVIL DIVISION
Case No. 24-CV-00731



| Christopher Luce et al v. Matthew Pierson et al |
| --- |

## ENTRY REGARDING MOTION

Title:        Motion for Preliminary Injunction (Motion: 4)
Filer:         Christian Chorba
Filed Date:   June 28, 2024

The motion is GRANTED IN PART.

The present matter concerns an on-going dispute between neighbors involving a private right-of-way. Defendants Matthew and Jamie Pierson presently seek a preliminary injunction against Plaintiffs Christopher Luce and Linda Bonnett to prevent them from using the non-graveled portions of the right-of-way based on Plaintiffs' alleged over-use and mis-use of the right-of-way.

### Background Facts and Procedural History

The basic facts are as follow. The parties live in Thetford, Vermont on a subdivision that was originally created by Franklin and Margaret Godfrey in 1977.[1] The subdivision lies between Latham Road and Interstate 91. The two lots are stacked so that Defendants have the front lot that sits on the Latham Road, and the Plaintiffs' lot sits between Defendants' lot and Interstate 91, which sits behind them. While the Defendants have frontage on Latham Road, it appears from the evidence that both parties use the private Right-of-Way known as Makalas Way, named after the Piersons' late daughter, to access their homes.

Plaintiffs' general right to enter and exit their property is not disputed. Plaintiffs' chain of title grom the Godfreys' original subdivision grants them the following easement:

> Together with a right of way approximately 50' wide leading westerly from Latham
> Road to the aforementioned parcel and parcel #3. Said right of way is approximately

---

[1] The original subdivision involved 6 lots of various sizes. For purposes of the present motion, the Court will be focusing on the lot owned by Plaintiffs (Lot #5) and Defendants (Lot #6).

25' wide northerly of the northerly boundary lot #4 and 25' wide southerly of the northerly boundary of lot #4. Said right of way is to be used in common for all the usual purposes with the grantors, their heirs and assigns and the grantees, their heirs and assigns for ingress, egress and regress and to share equally in construction and maintenance thereof.

Bonnett to Bonnett and Luce, Quit Claim Deed, Book 129, Page 95, Town of Thetford Land Records (Dec. 18, 2007).

The location of the right-of-way is also generally not disputed. There are iron pins located at the corners of the right of way near Latham Road, and the 50-foot right-of way sits half on the Defendants' property and half on their abutting neighbors' property to the south.[2]

The crux of the parties' dispute and the present motion for a preliminary injunction concerns how the parties may use different portions of the easement. While the easement is 50 feet wide, the actual graveled and traveled portion of the right-of-way is narrower. The remaining portion of the right-of-way is grass and on the Defendants' side, blends into their yard. Plaintiffs maintain that they have a right to travel over these portions of the right of way and to mow, plow, and maintain these portions of the right of way. Plaintiffs have also asserted that Defendants may not erect any structures within the right-of-way.

Defendants contend that Plaintiffs' use of the grassy portions of the right-of-way, including mowing the grassy portion 3-4 times a week in the summer, constitute an overuse and harassing behavior.

The present matter began in February 2024 with Plaintiffs' complaint alleging that Defendants (1) built a permanent structure in a deeded right of way; (2) caused property damage to Plaintiff and refused to share the cost of driveway maintenance; (3) caused emotional distress to Plaintiffs; and (4) interfered with Plaintiffs' use of the easement.

On June 28, 2024, Defendants filed for a preliminary injunction seeking to limit Plaintiffs' use of the grassy portion of the easement. Defendants alleged that Plaintiff Luce was driving his riding mower along this portion of the right-of-way every other day, making multiple passes along the Defendants' property each time. From the photographic evidence and testimony, it appears that Plaintiff's near-daily presence creates tension between the parties that the Defendants characterize as harassment.

---

[2] The other two parties sharing in the right-of-way, Orin Pacht and Gerd Riess, (Lots 3 and 4, respectively) are not parties to the present matter and were not named in Plaintiff's complaint.

On October 14, 2024, the Court conducted a preliminary injunction hearing and took testimony from both parties. Based on the evidence presented, the Court stated on the record that it would make sense for both parties to refrain from using, maintaining, or travelling along the non-graveled portions of the easement. The Court made this observation based on the following analysis, which while not articulated in full at the hearing is now articulated in greater detail:

First, Plaintiffs' activities travel along the non-graveled portions of the right-way do not appear to be part of the non-exclusive rights of "ingress, egress, and regress" that Plaintiffs hold through their deed. As the Vermont Supreme Court has noted, "[w]here the intent is clearly to create a right of ingress and egress, but the language of the deed is general, the dominant estate is entitled to a convenient, reasonable, and accessible way." *Gladchun v. Eramo*, 2023 VT 5, ¶ 7 (quoting *VTRE Investments, LLC v. MontChilly, Inc.*, 2020 VT 77, ¶ 23 (internal quotations omitted). While there is only one case in Vermont dealing with the term "ingress, egress, and regress,"[3] the Vermont Supreme Court has noted that the terms ingress and egress define the terms as the power to enter or access (ingress) and the right to go or come out (egress, *Gladchun*, 2023 VT 5, at ¶¶ 4, 13. The term "regress" is defined by Black's Law Dictionary to mean "The right or liberty of going back; reentry." Black's Law Dictionary 1289 (7th ed. 1999).

In this respect, while there is no question that Plaintiffs are entitled to use the graveled portion of Makalas Way to enter and exit their property, Plaintiffs' use of the non-paved portions raise a question of unreasonable interference with the servient estate. Restatement (Third) of Property (Servitudes) § 4.10, cmt.h (2000) (noting that use by a dominant estate that exceed the contemplated intent of the easement constitutes unreasonable interference). While the Court will reserve full judgment on this issue, the evidence demonstrates that Plaintiffs' on-going use and traversing of the non-graveled portions of the easement effective create multiple "ways" within the right-of-way, which exceed the intent of the original easement to enter, exit, and return to their property.

Second, the uses that Plaintiffs are making on the grassy portions of the easement are not essential to Plaintiffs' deeded purpose of ingress, egress, and regress or for the purpose of

---

[3] *Woodcock v. Estey*, 43 Vt. 515 (1871). In that case, an owner had reserved spring rights to a "spring or fountains from which water is now conveyed" and also the "right or privilege of free ingress, egress and regress at any an all times to the aqueduct that conveys the water from said spring to said house." Id. at 521. The Court decision focused on other portions of the grant, but it appears to have understood this "ingress, egress, and regress" language as simply a right to travel across lands no longer retained by owner for the purposes of accessing the aqueduct, which owner retained, to perform repairs or replacements. Id. at 522.

maintenance. They are more aptly characterized as expressions of Plaintiffs' beliefs that their easement rights give them the authority to travel up and down the grassy portions of the easement at will and with no other purpose.

Third, these activities provide a nexus point where Plaintiffs' assertions of their perceived rights create conflict with Defendants' enjoyment of their property. As both parties have made claims that the other's activities have caused emotional distress, it would appear to be in both parties' interest to avoid unnecessary confrontations.

At the October 14th hearing, the parties agreed that a temporary order that required both parties to stay off the non-graveled portions of the right-of-way made sense and was acceptable. The one caveat that was expressed was a concern with how plowing was to occur, and the parties' post-hearing motions indicate that they do not agree as to how winter plowing of the right-of-way should occur.

Notwithstanding, the parties' general interest in a mutual injunction, there was evidence that Plaintiffs were not entirely in agreement with the terms and conditions being discussed. Subsequent filings from Plaintiffs have shown this concern to be well-founded. Therefore, the Court conducted a complete hearing on the motion at the October 14, 2024 hearing, and it took evidence and testimony from both sides on the pending issue of whether it should issue an injunction.

Based on the evidence and testimony, the Court finds that Plaintiffs have regularly used the grassy portions of the easement as a means of travel and have used these portions despite an adjacent, open, and graveled right of way. The Court finds that this use is beyond the scope of Plaintiffs' easement rights and effectively seeks to create a second way of travel within the easement. To the extent that some of Plaintiffs' use was for the purposes of maintenance, Plaintiffs acted in an unreasonable and excessive manner by mowing this land 3 to 4 times per week. These actions appear to have no other purpose apart from a bald assertion of Plaintiffs' perceived property rights and to harass Defendants.

**Preliminary Injunction**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (quoted in *Taylor v. Town of Cabot*, 2017 VT 92, ¶ 19). In reviewing a motion for a preliminary injunction, the moving party bears the burden of establishing each element of a preliminary injunction claim and demonstrating that each factor warrants the imposition of a preliminary injunction. *Taylor*, 2017 VT 92, at ¶ 19.

The elements of a preliminary injunction under Vermont law include: "(1) the threat of irreparable harm to the movant; (2) the potential harm to the other parties; (3) the likelihood of success on the merits; and (4) the public interest." Id. (quoting *In re J.G.*, 160 Vt. 250, 255 n.2 (1993)).

1. *Irreparable Harm*

The issue of irreparable harm nearly always rests on the issue of money. If the moving party has an adequate remedy in the form of money damages or other relief, then a preliminary injunction should be denied. *Taylor*, 2017 VT 92, at ¶ 40 (citing C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2948.1 (3d ed. 2017)). In this case, the testimony of the parties indicates that harm is largely irreparable in nature. Defendants, while they take issues with the quality of Plaintiffs' mowing, do not claim any damage to non-graveled portions of the right-of-way from Plaintiffs' actions. Their primary complaint is that Plaintiffs' near-daily actions are causing distress and are taking away from their ability to occupy and enjoy their property. Plaintiffs claim that they are merely asserting their private easement rights and are doing so despite Defendants actions out of a fear that if they acquiesced, they might lose these rights.

Such non-damaging infringements on either parties' "rights" fit within the definition of irreparable harm because any potential monetary damages awarded are unlikely to address the wrongs alleged. See *Evans v Cote*, 2014 VT 104, ¶ 8 (holding that a continuing trespass constituted irreparable harm because damages would be inadequate to address the wrong). As such, the Court finds that the element of irreparable harm has been met.

2. *Likelihood of Success on the Merits*

The wrinkle in the present case is that Defendants have not asserted any claims but only affirmative defenses to Plaintiffs' claims. The Court's analysis is focused primarily, then on whether Defendants have shown a likelihood of success in refuting Plaintiffs' claims, which are, in turn premised, on an expansive interpretation of their easement rights. As noted above, Defendants have demonstrated a strong likelihood of success on the merits concerning certain uses that Plaintiffs are making of the non-graveled portions of the right-of-way. Particularly, Plaintiffs' use of these portions as a second way of a travel that parallels the graveled portions of the road has a strong likelihood of succeeding as a matter of law. Defendants' evidence also shows that Plaintiffs engaged in activities under the term maintenance, but that were in excess of normal maintenance

and were either efforts to assert their believed property rights or in certain cases to harass Defendants. As the Restatement (Third) of Property (Servitudes) § 4.10, cmt. e notes, the right to maintain a right-of-way must not unreasonably interfere with the enjoyment and use of the servient estate. "The servitude should be interpreted to reach a fair balance of [the parties'] interests . . ." Restatement (Third) of Property (Servitudes) § 4.10, cmt. h. In this case, the preliminary evidence indicates that Plaintiffs' use, particularly with regards to the grassy portions of the easement is not a fair balance of the parties' rights and constitutes use that exceeds the Plaintiffs' deed easements. This is further supported by Section 4.9 of the Restatement, which states that "the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude." Restatement (Third) of Property (Servitudes) § 4.9.

While the Court has determined that there is a likelihood of success on these points, the evidence is insufficient for the Court to determine, at this point, where Defendants' interests precisely sunset and Plaintiffs' rise. In particular, the Court will note that Section 4.10 indicates that unless the original grant denies such a right, the dominant estate has a right to maintain and repair the easement. Id. at § 4.10, cmt. e. The problem in this case is that much of what the parties are disputing could be characterized as the margins of this easement. Plaintiff Luce admitted that he was not mowing the easement because of any visual or safety issues with sight lines along the travelled portion of the right of way. While this makes it straightforward to simply enjoin the parties from mowing the grassy areas for the next six months, the Court is concerned with drawing workable, simple lines between the parties to address on-going maintenance.

At the same time, the Court is mindful that a preliminary injunction is not intended to address all potential issues to be raised, but that any injunction should be narrowly tailored to the areas where the moving party has shown some likelihood of success and whether this showing is sufficient to support the proposed injunction. See *In re Petition of Vermont Gas Systems, Inc.*, 2016 VT 132, ¶ 2 (review of likelihood of success on the merits must be focused on the underlying issues involved and not on the larger case). Given the limited time and scope of the proposed injunction, the Court finds that for purposes of likelihood of success on the merits, this factor favors an injunction similar to the lines that Defendants have sought. Defendants have met their burden on this prong.

3. *Potential Harm to Other Parties*

As the Court noted above, this dispute has little to do with the undisputed, primary purpose of the easement. The Court has not been able to identify any particular harm or damage accruing to Plaintiffs apart from an alleged infringement on their rights or harm that Plaintiff Luce claims to have suffered from his on-going contacts and dealings with Defendants. The Court finds that a limited injunction in scope and in duration will not result in harm to either party. For this prong, Defendants have met their burden.

4. *Public Interest*

The final element of public interest is not directly invoked in the present matter as this prong is most often triggered when the injunction threatens a public interest, often when one of the entities either seeking or opposing the injunction is a public agency. See *Time Warner Cable of New York City v. Bloomberg, L.P.*, 118 F.3d 917, 929 (2d Cir. 1997) ("Whenever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief."). In this case, the Court is being asked to interpret private interests between landowners and the private rights that arise from such interests. To the extent that there is a public interest involved in the present case, it may be framed in general terms that the law, and by extension the public, expect Courts to uphold property rights and to provide parties with remedies for when such rights are impinged or unbalanced. "A Court is often at its peril in determining the public interest." *Duprey v. Samuelson*, Dckt No. 23-CV-02299; 2023 WL 5338904, at *7 (Wash. Sup. Ct. Jun. 1, 2023) (Tomasi, J.). So in this case, the Court finds that the public interest is neither advanced nor prejudiced by the outcome of this motion as no public interests are directly implicated.

Based on this analysis, the Court finds that the public interest prong is not triggered and is not directly relevant to the present motion.

5. *Conclusion*

Based on the foregoing, the Court finds that a preliminary injunction is warranted, and Defendants have sustained the burden necessary to establish a right to the injunctive relief sought in this matter. The Court has reviewed the proposed injunctive order proposed by Defendants and has reviewed Plaintiff's objections. Based on its findings, the Court adopts the following Order consistent with its findings and conclusions as well as the mutual representations of the parties at the

October 14th hearing and in their post-hearing filings. The purpose of this Preliminary Injunction is not to resolve the parties' underlying claims, but it is to create and enforce as much of a separation between the parties as is possible and reasonable for a period of time to allow the parties to either resolve this matter through mediation or by discovery and development of their legal claims.

## Preliminary Injunction

The parties shall adhere to the following terms from the date of this order until 11:59 pm on May 1, 2025:

1. The parties shall adhere to the following order related to the easement shown on the Godfrey Subdivision Map. This injunction applies only Plaintiffs and Defendants and to the portions Pierson lot/property identified as Lot #6 that are subject to the existing right-of-way easement described in both parties' deeds and is shown on the Subdivision Map.

2. The south side of the easement is not restricted or part of this preliminary injunction. The servient estate, on which this portion lies—identified as Lot #4 on the Godfrey Subdivision Map—belongs to Gerd Reiss, who is not a party to this case and is not bound or obliged by the terms laid out in this Order. This injunction shall also not apply to Orin Pacht, owner of Lot#3 and the fourth party with rights and interests to Makalas Way, who is also not a party to the present action.

3. Except as laid out below, Plaintiffs are ordered to refrain from any entry or maintenance onto any portion of the Pierson's property, including any grassy portions of the right-of-way. This limitation shall not apply in any manner to the graveled portions of the right-of-way as it presently exists, and nothing in this Order shall be interpreted to prevent Plaintiffs from ingress, egress, and regress along this gravel portion of the right-of-way.

4. Defendants shall have primary responsibility for maintaining the northerly part of the right-of-way lying across their land. Defendants' responsibilities include, but are not limited to, maintaining their portion of the right of way consistent with the Town of Thetford's Zoning Bylaws, particularly Ordinance 3.13 (B).

5. Plaintiffs may perform emergency maintenance on the right-of-way. Emergency maintenance is limited to things that block or interfere with ingress, egress, and regress along the gravel portion of the right-of-way and would include, but are not limited to, removing

fallen trees or branches, repairing washouts, potholes and ruts, or addressing any other impediment that makes travel from Plaintiffs' property to Latham Road impossible along the gravel portion of the right-of-way. No prior notification is required for an emergency maintenance.

6. Defendants may hire, by themselves or in conjunction with any other owner served by Makalas Way, a snowplow contractor of their choosing to plow the gravel portions or the right-of-way with the following limitations:

   a. Defendants and their contractor are not permitted to plow snow onto Plaintiffs' property, unless expressly authorized by Plaintiffs.

   b. Defendants and their contractor must push any piles of snow, created by plowing, off the graveled portions of the right of way in a manner consistent with reasonable Vermont snowplowing practices. Any snow piles shall be pushed back enough to maintain the graveled right-of-way and to prevent flooding onto this portion of the right-of-way due to melting snowbanks.

   c. Defendants and their contractor may not interfere with Plaintiffs' right to ingress, egress, and regress.

   d. Defendants' contractor shall be adequately licensed and insured to operate a snowplow.

   e. The contractor must remove snow and prevent ice build-up in the driveway, clear the mailboxes so that mail delivery is not hindered, and keep the driveway apron at Latham Road clear of snow left by the Thetford Town Plow Trucks.

   f. Defendants' contractor must maintain the driveway on a regular basis, including sanding as the contractor determines is needed in his or her professional opinion and as ground conditions may require Defendants to request.

7. Defendants are ordered to be solely responsible for the costs of such services.

8. Plaintiffs will notify the Defendants' attorney if any problems with the plowing described above arise, which the Defendants shall address with good faith to correct or clarify.

9. Plaintiffs shall be responsible for plowing the portion of the right-of-way on their property, and they may plow the graveled portion of the right-of-way on Defendants' property whenever needed to maintain their right to ingress, egress, and regress, which is determined but not limited to their ability to receive fuel, packages, fire, ambulance service and other services as well as safely enter and exit their property in a motor vehicle.

10. Defendants may not approach Plaintiffs while they are ingressing, egressing, or regressing within the limits of this stipulation.

11. Plaintiffs may not approach Defendants while Plaintiffs are ingressing, egressing, or regressing.

12. Both parties shall behave in a civil manner in their person-to-person interactions and shall end conversations where civil discourse, in that moment, proves not to be possible.

13. The parties to this action are ordered to early mediation consistent with the concurrent Order of the Court on Plaintiffs' Objection to Entry Order Regarding Mediation.

14. Any violation of this agreement may result in a contempt of court finding.

Electronically signed on 11/3/2024 9:38 PM pursuant to V.R.E.F. 9(d)

Vermont Superior Court
Filed 11/05/24
Orange Unit

Daniel Richardson
Superior Court Judge